UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | COMMONWEALTH<br>BIOTECHNOLOGIES, INC. | Case No. 11-30381-KRH<br>Chapter 11 |
| | Debtor. | |

COMMONWEALTH BIOTECHNOLOGIES, INC.

Plaintiff,

v.                                                                                                Adv. Pro. No. 12-03038

FORNOVA PHARMWORLD, INC.

Defendant.

### MEMORANDUM OPINION

Commonwealth Biotechnologies, Inc. (the "Plaintiff") filed a bankruptcy petition in this Court under Chapter 11 of the Bankruptcy Code on January 20, 2011 (the "Petition Date"). On February 10, 2012, Plaintiff filed a Complaint (the "Complaint") against Fornova Pharmworld Inc. (the "Defendant"), in which it objected to Defendant's Claim Number 18-1 (the "Claim")[1] under 11 U.S.C. §§ 105(a) and 502 (2006)[2] and Rules 3001, 3007, and 7001(8) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). The Complaint alleged that the Claim was unfounded because no business relationship existed between Plaintiff and Defendant and, as a result thereof, no documentation existed in support of the Claim.

---

[1] Defendant filed a proof of claim in Plaintiff's bankruptcy case on May 16, 2011. It attached a note and modification agreement to the proof of claim form. The form is signed by A. Chien as trustee for Fornova Pharmworld Inc..

[2] Title 11 of the U.S. Code may hereinafter be referred to as the "Bankruptcy Code."

Plaintiff had difficulty identifying the legal entity that filed the Claim. Not only did Defendant fail to appear anywhere in Plaintiff's books and records, but Defendant also was not listed on the records of the Virginia State Corporation Commission as an entity authorized to transact business in the Commonwealth of Virginia. Plaintiff was unable to locate corporate information anywhere in the world pertaining to Fornova Pharmworld Inc. Although a note and modification agreement was attached to the Claim, those documents refer to an entirely different entity, Fornova Pharmaworld US Inc.[3] That different Fornova entity filed suit against Plaintiff in the United States District Court for the Eastern District of Virginia (Richmond Division) back in November 2010 (the "District Court Action"). Liping Du, the Executive Director of Fornova Pharmaworld US Inc., swore under penalty of perjury in the District Court Action that the Purported Note[4] was payable to and held by Fornova Pharmaworld US Inc. The law firm of Morrison & Foerster LLP represented Fornova Pharmaworld US Inc. in the District Court Action, but later withdrew from the representation due to its inability to communicate with its client. The District Court Action remains open on the docket, although it has been stayed pursuant to 11 U.S.C. § 362.

Plaintiff served the Complaint on several parties including: (1) Andrew Chien, the person who filed the Claim and was the alleged trustee for Defendant, via first class mail in New Haven, Connecticut; (2) Bill Guo, the chief executive officer of Venturepharm Laboratories Limited, via first class mail in Beijing, China, and via email at bill@venturepharm.net; (3) Fornova Pharmaworld US Inc. through OMC Chambers, its registered agent, via first class mail in

---

[3] Fornova Pharmworld Inc. (no "a" in Pharmworld and no "US" in the name) filed the Claim. No attempt to reconcile this obvious discrepancy in the names of the two Fornova entities was ever forthcoming.

[4] *See infra* notes 10-12 and accompanying text.

Tortola, British Virgin Islands; and (4) Liping Du, the Executive Director of Fornova Pharmaworld US Inc., via first class mail in Kowloon, Hong Kong.

Defendant failed to file a timely Answer to Plaintiff's Complaint. Instead, Andrew Chien ("Chien"), purporting to represent Defendant as its "trustee," filed a motion to dismiss the Complaint on Defendant's behalf. As Chien was not an attorney, the Clerk's office issued a deficiency notice under Local Bankruptcy Rule 9010-1.[5] Notwithstanding the deficiency notice, Chien appeared on behalf of Defendant at a pretrial conference conducted on March 20, 2012. At that time, the Court advised Chien that Local Bankruptcy Rule 9010-1 required corporations to be represented by counsel and directed him to retain counsel for Defendant. Thereafter, Chien made repeated attempts to circumvent the Court's instruction that he retain counsel to represent Defendant. At a subsequent hearing, the Court further admonished Chien that he was not allowed to represent the interests of Defendant in the bankruptcy case and expressly instructed him to hire counsel for Defendant. When it became clear that Chien had no intention of following the Court's instruction, the Court entered Orders on May 1, and June 12, 2012, striking the pleadings he had filed on behalf of Defendant from the record.

Although it appeared from Chien's conduct that Defendant was well aware of this adversary proceeding, the Court *sua sponte* questioned whether service on Defendant needed to be effected under the provisions of the Hague Convention. By Order entered July 2, 2012, the Court granted Plaintiff's motion authorizing and approving a specific method for service of process under Rule 4(f)(3) of the Federal Rules of Civil Procedure, made applicable to cases

---

[5] Local Bankruptcy Rule 9010-1 provides that "no party or entity other than a natural person acting in his or her own behalf . . . may appear in a bankruptcy case or proceeding, sign pleadings, or perform any act constituting the practice of law . . . . This Local Bankruptcy Rule applies to corporations." Filings on behalf of a corporation by a non-attorney shall be stricken by the Clerk within fourteen days of filing.

under the Bankruptcy Code by Bankruptcy Rule 7004. Plaintiff secured an alias summons from the Clerk of Court and subsequently re-served the Complaint in accordance with the Court's July 2, 2012, Order. No answer or other response was timely filed thereto. On August 21, 2012, Plaintiff moved for the entry of default and default judgment. The Clerk entered default against Defendant on August 22, 2012.

A hearing on Plaintiff's Motion for Default Judgment (the "Motion") against Defendant was held on September 11, 2012. Defendant failed to attend the September 11 hearing.[6] At the hearing, the Court conducted a trial on the merits of Plaintiff's Complaint. Plaintiff introduced twenty-six exhibits into evidence and presented testimony from three witnesses: Dr. Richard J. Freer, Mr. James D. Causey, and Mr. James H. Brennan. The Court, having concluded that Defendant's Claim should be disallowed in its entirety for the reasons set forth herein, entered an Order on October 5, 2012, granting Plaintiff's Motion.[7]

This memorandum opinion sets forth the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.[8] The Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 16, 1984. This is a core proceeding, *id.* § 157(b)(2)(A), (B), (C), and (O), in which final orders or judgments may be entered by a bankruptcy court, *id.* § 157(b)(1). Venue is appropriate in this Court. *Id.* § 1409(a).

---

[6] On September 10, 2012, Andrew Chien filed a letter on Defendant's behalf, which the Court construed as a Motion to Continue. The Court denied the Motion to Continue by Order entered October 5, 2012.

[7] On October 15, 2012, Andrew Chien filed a notice of appeal on behalf of Defendant pursuant to 28 U.S.C. § 158(a).

[8] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Plaintiff is a publicly-held Virginia corporation. Pl.'s Ex., 1. Since the Petition Date, Plaintiff has operated and managed its business as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. In 2008, Plaintiff entered into a joint venture agreement with Venturepharm Laboratories Limited, a Chinese limited company, ("Venturepharm") to jointly market and sell products and services worldwide (the "Joint Venture"). Pl.'s Ex. 1. At that time, William Guo ("Guo") was the Chief Executive Officer of Venturepharm. Pl.'s Ex. 1, at 15; Pl.'s Ex. 2.[9] The Joint Venture required contributions from both Plaintiff and Venturepharm. Pl.'s Ex. 1. Although Plaintiff performed all of its obligations under the joint venture agreement, Venturepharm did not. Pl.'s Ex. 4. Plaintiff suffered serious financial and reputational damage as a consequence of Venturepharm's failure to perform. Pl.'s Ex 8. Plaintiff found itself in sudden need of an immediate equity infusion in order to recover and continue its business operation.

Seizing on the financial distress that Venturepharm had inflicted upon Plaintiff, Guo arranged for a $500,000 emergency cash investment from an "unrelated third party." Pl.'s Ex. 9. The investment was negotiated, approved, and delivered to Plaintiff in its entirety by Guo. A convertible note was to be executed, but Plaintiff did not know the identity of the holder.[10] Pl.'s Ex. 12. There was never any contact between Plaintiff and the "unrelated third party;" all communications were effectuated through Venturepharm or Guo.[11]

---

[9] By August 15, 2008, Guo was authorized to become an officer and director of Plaintiff, Pl.'s Ex. 2, and was so seated on September 18, 2008.

[10] Although the parties intended for the cash infusion to be an equity investment, the transaction was evidenced by the execution of a convertible note rather than by the issuance of new stock because Guo was concerned that a stock transaction might run afoul of U.S. securities laws. At the time of execution, Plaintiff's stock had a strike price of $1.01.

[11] It was not until a day or two before the Purported Note was executed that Fornova Pharmaworld US Inc. was identified as the investor. Several requests by Plaintiff's Board of Directors to get full disclosure on the corporate

On August 29, 2008, Guo directed Plaintiff to execute a Convertible Promissory Note in the principal amount of $500,000.00 (the "Purported Note"). The Purported Note is signed by Plaintiff, but was never witnessed. Pl.'s Ex. 24. The Purported Note identifies Fornova Pharmaworld US Inc. as the holder.[12] *Id.* Plaintiff attempted to make cash payments to Fornova Pharmaworld US Inc. to satisfy the terms of the Purported Note, sending a total of four checks. Pl.'s Ex. 13. None were cashed. *Id.* None were returned as undeliverable. No explanation was ever received.

Guo imposed three requirements on Plaintiff in exchange for coordinating the transaction with Fornova Pharmaworld US Inc. Pl.'s Ex. 14. First, Guo required that he be seated as chairman of Plaintiff's Board of Directors. *Id.* Accordingly, on September 9, 2008, Dr. Richard J. Freer ("Dr. Freer") resigned his position as chairman. Pl.'s Ex. 15. Guo then served as chairman from January 23, 2009, until March 11, 2011, when he was removed for cause, Pl.'s Ex. 17 & 19. Second, Guo required that Venturepharm be given the right to nominate two additional directors to Plaintiff's Board. Pl.'s Ex. 14. Third, Guo required that Venturepharm be given the right to review and monitor all of Plaintiff's finances. *Id.* Plaintiff met each and every one of these demands.

Shortly after the investment transaction with Guo was concluded, Plaintiff entered into a modification agreement with other shareholders. Pl.'s Ex. 21. Guo emailed Plaintiff on behalf

---

structure of Fornova Pharmaworld US Inc. and on Guo's role in that corporate structure were rejected by Guo. Plaintiff never received any information from or had any direct contact with any director or officer or representative of Fornova Pharmaworld US Inc. other than Guo during this process.

[12] There was some ambiguity in the Purported Note. Fornova Pharmaworld, a corporation located in the British Virgin Islands, was also identified in the Purported Note as a possible payee. As Fornova Pharmaworld US Inc. is identified as the holder in the "Acknowledgement by the Holder" section of the Purported Note, the Court finds that it is the holder of the Purported Note. What is clear is that Defendant is neither the payee under nor the original holder of the Purported Note.

of Fornova Pharmaworld US Inc., objecting to this modification and demanding that Fornova Pharmaworld US Inc. receive similar terms and treatment (the "Modification Demands"). *Id.*

A disagreement ensued between Guo and the other members of Plaintiff's Board of Directors as to whether Dr. Freer should be reinstalled as Chief Executive Officer. On May 14, 2009, after Dr. Freer was reinstated by a narrow margin (four votes in favor and three votes, Guo and Venturepharm's two Board members, voting against), Fornova Pharmaworld US Inc. issued a "Notice of Default" as the holder of the Purported Note. Pl.'s Ex. 24. Plaintiff reluctantly agreed to Guo's Modification Demands on August 14, 2009. Plaintiff reduced the conversion price on the Purported Note, and it agreed to issue millions of shares to Fornova Pharmaworld US Inc. and Venturepharm. Pl.'s Ex. 21.

Notwithstanding Plaintiff's acquiescence to Guo's Modification Demands, Fornova Pharmaworld US Inc. filed the District Court Action in November 2010. Pl.'s Ex. 24. Plaintiff filed its bankruptcy petition under Chapter 11 of the Bankruptcy Code in response thereto. Fornova Pharmaworld US Inc.[13] received notice of the commencement of Plaintiff's bankruptcy case and the need to file a proof of claim. Fornova Pharmaworld US Inc. failed to file a claim in Plaintiff's bankruptcy case.[14]

Well after the Petition Date and without Plaintiff's knowledge or permission, Guo unilaterally changed Plaintiff's EDGAR access codes with the United States Securities and

---

[13] To the extent it is a separate legal entity distinct from Fornova Pharmaworld US Inc., Fornova Pharmaworld Inc. also received notice of the commencement of Plaintiff's bankruptcy case through its statutory agent in the British Virgin Islands, and it was put on notice of the need to file timely a proof of claim form.

[14] Instead, a Claim was filed by Defendant, Fornova Pharmworld Inc. Defendant was never able to reconcile, resolve, or otherwise explain the obvious discrepancy between itself and Fornova Pharmaworld US Inc., although it was given ample opportunity to do so.

7

Exchange Commission ("SEC") on March 9, 2011.[15]  Pl.'s Ex. 26, at O.  Guo then filed a Form 8-K with the SEC, notifying Plaintiff's shareholders that he intended to (1) hold a shareholders' meeting to remove all members of the Board except himself; and (2) reorganize Plaintiff outside of bankruptcy.  *Id.*; Pl.'s Ex. 19.  In this Form 8-K, Guo reported that he had hired Andrew Chien as a representative to manage the shareholders' meeting.  Pl.'s Ex. 26, at O.  Guo also stated that Chien was going to file an additional Form 8-K and a Form 15.  *Id.*  Two days later, either Guo or Chien filed another Form 8-K with the SEC, which included more details about the intended shareholders' meeting.  Pl.'s Ex. 26, at P.  Finally, either Guo or Chien filed a Form 15 with the SEC, which attempted to terminate Plaintiff's registration under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78kk (2006).  Pl.'s Ex. 26, at Q.

After these filings by Guo, Kaufman & Canoles ("K&C") notified the SEC that Plaintiff's access codes had been compromised and that these filings were not authorized.  *Id.* at 2.  With the SEC's permission, Plaintiff obtained new access codes.  *Id.*  Plaintiff filed a Form 15A, withdrawing the Form 15 that Guo had filed.  *Id.* at R.  The SEC refused Plaintiff's request that Guo's other filings be removed from EDGAR, pending further investigation.  *Id.* at S.  Guo

---

[15] This was not the first time that Plaintiff and Guo had squabbled over SEC filings.  On October 28, 2010 (almost three months before the Petition Date), Plaintiff filed a preliminary proxy statement with the SEC, which sought, in part, shareholder approval of the sale of Plaintiff's wholly-owned Australian subsidiary.  Pl.'s Ex. 26, at A.  This proxy statement started a flurry of demand letters.  First, Guo requested the proxy statement be amended to include a proposal to remove Dr. Freer and Dr. Paul D'Sylva ("Dr. D'Sylva") from the Board.  *Id.* at B.  Then, Dr. D'Sylva and Dr. Freer, in separate demand letters, requested the proxy statement be amended to include a proposal to remove Guo from the Board.  *Id.* at C, D.  Next, in a second demand letter, Dr. Freer requested the proxy statement be amended to include proposals to remove Venturepharm's two board members, Maria Song and Eric Tao.  *Id.* at E, F.  Finally, Plaintiff received a second demand letter from Guo, requesting the proxy statement include a proposal to remove Dr. Freer, Dr. D'Sylva, Samuel Sears, and James Causey from the Board.  *Id.* at G.

On Plaintiff's behalf, Kaufman & Canoles ("K&C") submitted a no-action request letter to the SEC, noting Plaintiff's intent to omit all of these proposals from its proxy statement.  *Id.* at H, M.  K&C also requested the SEC waive the requirement that any no-action request be filed eighty days prior to filing proxy materials.  *Id.* at J.  On December 28, 2010, the SEC granted both requests.  On December 6, 2010, Chien sent a letter to K&C, charging that Plaintiff violated several provisions of the securities laws.  *Id.* at I.  K&C responded to Chien's letter, explaining their position that Plaintiff had not committed these alleged violations.  *Id.*

again tried to change Plaintiff's EDGAR codes. *Id.* at 2. The SEC froze Plaintiff's EDGAR account in order to determine who was entitled to have access. *Id.* On May 4, 2011, the SEC granted Plaintiff access through K&C.[16] *Id.*

Unsecured creditors and equity security holders are required to file a proof of claim or interest in order to have an allowed claim in a bankruptcy case. Fed. R. Bankr. P. 3002(a).[17] Chien filed the Claim on behalf of Defendant on May 16, 2011, in the amount of $622,167.00. Pl.'s Ex. 25. Filed claims are deemed allowed unless a party objects. 11 U.S.C. § 502(a) (2006). Plaintiff objected to Defendant's Claim by filing this Complaint. When such an objection is filed, the court may disallow the claim if it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *Id.* § 502(b)(1).

The Purported Note could be construed to be an instrument.[18] An "instrument" under Virginia law is a "negotiable instrument," which in turn is defined as

> an unconditional promise or order to pay a fixed amount of money . . . if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money.

Va. Code. Ann. § 8.3A-104(a), (b) (2010).

In a suit on a negotiable instrument, the person asserting the right to enforce the instrument need only produce the instrument. *Id.* § 8.3A-308(b); *Long v. Long*, 895 So. 2d 34, 39 (5th Cir. 2005); 12 Am. Jur. 2d *Bills & Notes* § 597 (2012). Once the instrument has been

---

[16] The investigation caused Plaintiff to miss a mandatory filing and prevented Plaintiff from filing a Form 8-K to explain the delay to its shareholders.

[17] Bankruptcy Rule 3003 provides a limited exception to this filing requirement in Chapter 11 cases where a scheduled claim is not scheduled as disputed, contingent or unliquidated. Plaintiff's schedules, however, failed to list Defendant's Claim, so the exception was inapplicable.

[18] Plaintiff maintains that the cash infusion was always intended to be, and actually was, an equity investment.

produced, the burden of proof shifts to the defendant to prove any affirmative defenses. Va. Code Ann. § 8.3A-308(b); *Long*, 895 So. 2d at 39. However, if the instrument is not produced, then the plaintiff retains the burden of proving the instrument's terms and the right to enforce it. *Cf.* Va. Code Ann. § 8.3A-309(b) (applying in context of lost, destroyed or stolen instruments). Defendant failed to produce a note naming it as the payee.[19] As such, Defendant had the burden of proving both the instrument's terms and the right to enforce it. The Court finds that Defendant failed to meet its burden.

Under Virginia law, the only person entitled to enforce an instrument is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 8.3A-309 or § 8.3A-418(d)." *Id.* § 8.3A-301. Defendant failed to prove that it was the holder of the instrument. A holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 8.1-201(21)(A). As the Purported Note is payable to Fornova Pharmaworld US Inc. and not to bearer or Defendant, Defendant was not the original holder of the Purported Note.

There is no evidence that Fornova Pharmaworld US Inc. ever negotiated the Purported Note to Defendant. Where an instrument is "payable to an identified person, negotiation requires transfer of possession of the instrument *and* its endorsement by the holder." *Id.* § 8.3A-201. Endorsement, in turn, is defined as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument." *Id.* § 8.3A-204(a). The Purported Note attached to the Claim does not reveal any evidence of endorsement.

---

[19] Rather, Defendant has attached to the Claim a copy of the Purported Note, naming Fornova Pharmaworld US Inc. as the holder. There is no evidence that the note was ever assigned to Defendant or that Defendant is the successor to Fornova Pharmaworld US Inc.

Defendant failed to prove that it had physical possession of the Purported Note. Accordingly, Defendant is not the holder of the Purported Note.[20]

Defendant is not a nonholder in possession with the rights of a holder. The Official Comment provides that "[a] nonholder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under Section 3-203(a). It also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." *Id.* § 8.3A-301 cmt; *see also* U.C.C. § 3-301 cmt. (2011). There is no evidence of subrogation, transfer, or succession in this case. Rather, the evidence suggests the contrary. The Purported Note attached to the Claim provides that Fornova Pharmaworld US Inc. is the payee and holder thereof. In the District Court Action, the executive director of Fornova Pharmaworld US Inc. stated under penalty of perjury that it, not Defendant, held the Purported Note. Defendant is simply not an entity entitled to enforce the Purported Note.[21] As Defendant is not entitled to enforce the Purported Note, Defendant cannot bring suit on the Purported Note. *See Weaver Landfill, Inc. v. Eastman Envtl. Transp. Servs.*, 46 Va. Cir. 372, 373 (1998). It follows, then, that Defendant cannot assert a Claim in this bankruptcy case based thereon. The Court concludes that Defendant's Claim should be disallowed.

The Claim should also be disallowed on the grounds that it was not properly filed. Bankruptcy Rule 3001 requires that a proof of claim include the original or a duplicate of the writing upon which the claim is based. Fed. R. Bankr. P. 3001(c). While Defendant's Claim did

---

[20] A "holder in due course" is a holder who takes the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Va. Code Ann. § 8.3A-302(a). As Defendant is not a holder, it cannot be a holder in due course.

[21] The Court finds that neither Virginia Code § 8.3A-309 nor § 8.3A-418(d) is applicable to these proceedings. *See id.* § 8.3A-309, -418(d) (discussing enforcement of lost, destroyed, stolen, or dishonored instruments).

include a copy of the Purported Note, it did not include any transfer documentation evidencing Defendant's entitlement to enforce the Purported Note. Defendant could have avoided months of litigation over whether it was entitled to assert the Claim by simply providing a copy of the assignment documentation (assuming there was such a transfer). Instead, Defendant never bothered to amend its Claim.[22] Defendant had sufficient notice of its non-compliance with the Bankruptcy Rules and was afforded plenty of opportunity to cure. Accordingly, the Court finds that the Claim should be disallowed on the additional grounds that it does not comply with the Bankruptcy Rules.

The Court has determined that Defendant is not entitled to enforce the Purported Note under applicable Virginia law and that the Claim failed to comply with the requirements of the Bankruptcy Rules. The Court finds that either of these two independent grounds justifies disallowance of the Claim. As a result, the Court will disallow the Claim in its entirety pursuant to 11 U.S.C. § 502(b)(1) (2006).

In the alternative, the Court would find that the Purported Note should properly be recharacterized as an equity contribution with a strike price of $1.01. Bankruptcy courts in the Fourth Circuit have the power to recharacterize debt. *Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors* (*In re Dornier Aviation (N. Am.), Inc.*), 453 F.3d 225, 233 (4th Cir. 2006) ("[T]he exercise of th[e Court's equitable] power to recharacterize is essential to the implementation of the Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest."); *In re Cold Harbor Assocs. L.P.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997) ("This court is not required to accept the label of 'debt' or 'equity' placed by the

---

[22] Alternatively, if Defendant had mistakenly misspelled its name on the proof of claim form, Defendant could easily have filed an amended proof of claim or a new proof of claim, stating that it was in fact Fornova Pharmaworld US Inc.

debtor upon a particular transaction, but must inquire into the actual nature of a transaction to determine how best to characterize it.").

Courts consider several factors when determining whether to characterize a debt claim as equity. These factors include:

(1) the names given to the instruments, if any, evidencing the indebtedness;
(2) the presence or absence of a fixed maturity date and schedule of payments;
(3) the presence or absence of a fixed rate of interest and interest payments;
(4) the source of repayments;
(5) the adequacy or inadequacy of capitalization;
(6) the identity of interest between the creditor and the stockholder;
(7) the security, if any, for the advances;
(8) the corporation's ability to obtain financing from outside lending institutions;
(9) the extent to which the advances were subordinated to the claims of outside creditors;
(10) the extent to which the advances were used to acquire capital assets; and
(11) the presence or absence of a sinking fund to provide repayments.

*In re Dornier Aviation (N. Am.), Inc.*, 453 F.3d at 233 (quoting *Bayer Corp. v. Mascotech, Inc.* (*In re Autostyle Plastics*), 269 F.3d 726, 749-50 (6th Cir. 2001)); *see also In re Cold Harbor Assocs. L.P.*, 204 B.R. at 915. "None of these factors is dispositive and their significance may vary depending upon circumstances." *Sender v. Bronze Group, Ltd.* (*In re Hedged-Invs. Assocs., Inc.*), 380 F.3d 1292, 1298-99 (10th Cir. 2004). Notably, although "a claimant's insider status and a debtor's undercapitalization alone will normally be insufficient," recharacterization is appropriate where "other factors indicate that the transaction [wa]s not a loan at all." *In re Dornier Aviation (N. Am.), Inc.*, 453 F.3d at 234.

Applying these factors to the case at bar, the Court finds that Plaintiff was undercapitalized at the time the Purported Note was issued. All the evidence suggests that the transaction was not intended to be a loan. Rather, the Purported Note was intended by the parties to be an investment. The evidence suggests that the transaction was structured using a debt

instrument, rather than using an equity investment vehicle, in order to avoid the federal securities laws. The cash infusion was conditioned upon Plaintiff relinquishing control to Defendant in ways that are usually associated with an equity transaction. Thus, even if the Court had found Defendant to have a legitimate claim (which it did not), the Court would find, nevertheless, that both parties to the transaction intended the Purported Note to operate as an equity contribution. Therefore, the Court would recharacterize the claim as such. *See In re Cold Harbor Assocs. L.P.*, 204 B.R. at 915 (looking to substance over form).

Finally, if the Claim were allowed in any amount (which it is not, as the Court finds it should be disallowed or, in the alternative, recharacterized), the Court would find that there are adequate grounds to equitably subordinate the Claim to the valid allowed claims of general unsecured creditors. This Court is empowered to subordinate "all or part of an allowed claim [or interest] to all or part of another allowed claim [or interest]." 11 U.S.C. § 510(c)(1). The doctrine of equitable subordination provides that

> [a]ll or part of a claim may be subordinated. A claim may be subordinated to all or part of another allowed claim. Thus[,] depending on the circumstances, a subordinated claim may be relegated to the bottommost rung of claims or may be simply allowed after rather than ahead of the claim of a party who has in some way been injured by the conduct of the holder of the subordinated claim.

*Goode v. Hagerty* (*In re Sys. Impact, Inc.*), 229 B.R. 363, 373 (Bankr. E.D. Va 1998) (quoting 4 *Collier on Bankruptcy* ¶ 510.05, at 510-17 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012)). Equitable subordination is appropriate where "(1) the claimant engaged in inequitable conduct; (2) that conduct injured other creditors; and (3) subordination is consistent with other bankruptcy law." *Anderson & Assocs., PA v. S. Textile Knitters De Honduras Sewing Inc.* (*In re S. Textile Knitters*), 65 Fed. App'x 426, 439 (4th Cir. 2003) (citing *United States v. Nolan*, 517 U.S. 535, 538-39 (1996); *EEE Commercial Corp. v. Holmes* (*In re ASI Reactivation, Inc.*), 934

F.2d 1315, 1320 (4th Cir. 1991)); *see also Benjamin v. Diamond* (*In re Mobile Steel Co.*), 563 F.2d 692, 699-700 (5th Cir. 1977).

All three required elements for equitable subordination are present in this case. First, Defendant engaged in inequitable conduct. Generally, there are three categories of inequitable conduct: "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; [and] (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Fabricators, Inc. v. Technical Fabricators, Inc.* (*In re Fabricators, Inc.*), 926 F.2d 1458, 1467 (5th Cir. 1991); *In re Sys. Impact, Inc.*, 229 B.R. at 371. However, "any conduct, even if technically lawful, which violates rules of fair play or good conscience can be deemed inequitable." *Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 730 (D. Md. 1989). The party seeking equitable subordination "must present evidence of conduct which 'shocks the conscience' of this Court." *Id.* (quoting *In re Beverages Int'l, Ltd.* 50 B.R. 273, 281 (Bankr. D. Mass 1985)).

The Court finds that Plaintiff has presented evidence of Defendant's inequitable conduct, namely Chien's and Guo's actions during the bankruptcy case. Chien's behavior in this case on Defendant's behalf has been nothing short of shocking. Chien repeatedly violated the Court's instructions that he obtain counsel to represent Defendant. He ignored Court Orders to the same effect. Nevertheless, Chien, who is not an attorney, continued to file pleadings on behalf of Defendant in this Adversary Proceeding. Upon Plaintiff's motion, these filings were stricken from the record.[23] Ultimately, the Court found Chien to be in contempt, ordering Chien to pay sanctions and barring him from appearing for or filing further pleadings on behalf of Defendant

---

[23] The Court also awarded Plaintiff costs and expenses related to the stricken motion and memorandum of law. However, the Court deferred the award until a future, unspecified date.

except through counsel.  Chien ignored this order as well.[24]  The litigation Chien spawned unnecessarily depleted estate resources.  Funds that could have been distributed to creditors had to be used to pay Plaintiff's legal fees.  The Court questions whether Chien's filings of these senseless pleadings were, in fact, designed to deplete the assets of the bankruptcy estate.  The ongoing litigation has frustrated Plaintiff's attempts to present a plan in this case and has otherwise delayed resolution of the bankruptcy case.

While Chien was so engaged, Guo continued his attempts to take control of Plaintiff by making unauthorized, post-petition, illegal filings with the SEC.  He undertook these actions in order to advance claims allegedly held by Defendant against Plaintiff.  Guo was an insider of Plaintiff at the time he engaged in this misconduct.[25]  "[C]laims arising from the dealings between the debtor and its fiduciaries must be subjected to rigorous scrutiny, and, if sufficiently challenged, the burden shifts to the fiduciary to prove both the good faith of the transaction and its inherent fairness."  *Summit Coffee Co. v. Herby's Foods, Inc.* (*In re Herby's Foods, Inc.*), 2 F.3d 128, 131 (5th Cir. 1993).  The Court finds that Guo breached the fiduciary duty he owed to Plaintiff.

Fiduciary duties aside, Guo's misconduct constituted a clear violation of the automatic stay.  *See Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred*, 460 B.R. 681, 690, 692 (Bankr. E.D. Va. 2011) (holding the automatic stay prohibits all acts to collect a pre-petition debt including obvious and less direct acts).  Guo hired Chien to pursue Defendant's tactics to

---

[24] *See* notes 6 and 7 *supra*.

[25] In cases where the debtor is a corporation, the Bankruptcy Code defines "insider" to include (1) debtor's directors; (2) debtor's officers; (3) any person in control of the debtor; (4) a partnership of which the debtor is a general partner; (5) debtor's general partners; or (6) any relative of the persons listed herein.  § 101(31)(B).  Guo was a director of Plaintiff at the time of the SEC filings.

undermine Plaintiff's reorganization efforts. The Court finds that the conduct of both Chien and Guo on Defendant's behalf was inequitable, warranting subordination of Defendant's Claim. Equitable subordination of Defendant's Claim under these circumstances is entirely consistent with the equitable strictures of the Bankruptcy Code. For these reasons, the Court finds, in the alternative, that to the extent that Defendant's Claim might have been allowed in any amount under any circumstance, that Claim shall be subordinated to the valid allowed claims of general unsecured creditors.

Accordingly, judgment has been entered in favor of Plaintiff by separate order entered October 5, 2012.

ENTERED: _____

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/Kevin R. Huennekens
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE